O

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| DMB PACKING CORP., | Case № 2:20-cv-09013-ODW (AGRx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT [30]** |
| ELIBORIO RAMIREZ, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff DMB Packing Corp. filed this action to enforce its rights under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a-499t, as against Defendant Eliborio Ramirez.  (Compl., ECF No. 1.)  DMB now moves for entry of default judgment.  (Renewed Mot. Default J. ("Motion" or "Mot."), ECF No. 30.)  For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## II.   BACKGROUND

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1  (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).   The
2  well-pleaded factual allegations in DMB's Complaint are as follows.

3       DMB sells and ships produce, and it is subject to and licensed under PACA.
4  (Compl. ¶ 17.)  Nonparty Poblano Fresh Produce Corp. buys and sells produce, and,
5  like DMB, it is subject to and licensed under PACA.  (*Id.* ¶¶ 9, 11.)  Ramirez was an
6  officer or director of Poblano.  (*Id.* ¶ 6.)

7       Between October 9, 2019, and November 20, 2019, DMB sold Poblano a series
8  of shipments of fresh produce.  (*Id.* ¶ 12.)  Poblano agreed to pay DMB a total principal
9  amount of $230,918.00 for the shipments.  (*Id.*)  DMB issued invoices with each
10 shipment, and each invoice contained notice of DMB's intent to preserve its statutory
11 trust rights under PACA.  (*Id.* ¶ 21, Ex. 1 ("Invoices").)  DMB alleges Poblano failed
12 to pay DMB for the produce it purchased.  (*Id.* ¶ 13.)

13      Based on these facts, DMB asserts that Ramirez breached his duties as a PACA
14 trustee both by failing to pay for the produce, (*id.* ¶¶ 24–25), and by failing to preserve
15 and maintain sufficient PACA trust assets to pay DMB for the produce, (*id.* ¶¶ 28–31,
16 39–42).  Accordingly, DMB sues Ramirez for violations of PACA, breach of fiduciary
17 duty, unjust enrichment, conversion, and declaratory judgment.[2]  (*See* Compl.)

18      On December 15, 2020, DMB served the Complaint by substitute service on
19 Ramirez.  (*See* Proof Service, ECF No. 9.)  Ramirez failed to answer or otherwise
20 respond to the Complaint, and on January 15, 2021, DMB requested entry of Ramirez's
21 default.  (Req. Entry Default, ECF No. 11.)  On January 19, 2021, the Clerk entered
22 Ramirez's default.  (Entry Default, ECF No. 12.)  On February 5, 2021, DMB filed its
23 initial motion for default judgment.  (1st Mot. Default J., ECF No. 14.)

24

25

26  ──────────────
   [2] DMB explains it did not join Poblano as a defendant because Poblano filed a Voluntary Petition
27 under Chapter 7 in U.S. Bankruptcy Court for the Central District of California, Case No. 2:20-bk-
   11861-BR.  (Compl. ¶ 7.)  Therefore, including Poblano would have resulted in an automatic stay of
28 this proceeding under 11 U.S.C. § 362.  (*Id.*)

About one year prior, on February 20, 2020, Poblano initiated Chapter 7 bankruptcy proceedings.  (Pl.'s Mem. P. & A. ("Mem.") 4, ECF No. 30-3.)  Upon receiving notice of Poblano's bankruptcy filing and giving parties the chance to respond, on August 3, 2021, the Court stayed this action pending the resolution of Poblano's bankruptcy proceedings, holding DMB's initial default judgment motion in abeyance.  (Min. Order 3, ECF No. 21.)  The bankruptcy court ultimately approved a single and final distribution of $15,438.65 to DMB, and on January 13, 2022, Poblano's bankruptcy trustee paid DMB this amount.  (Mem. 4.)  After receiving a final status report from DMB, on May 9, 2022, the Court lifted the stay in these proceedings.  (Min. Order, ECF No. 29.)  DMB now renews its Motion for Default Judgment.

### III.   LEGAL STANDARD

Plaintiffs seeking default judgment must meet the procedural requirements set forth in Federal Rule of Civil Procedure ("FRCP") 55 and Local Rule 55-1.  Local Rule 55-1 requires that motions for default judgment include a declaration identifying: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under FRCP 55(b)(2).  C.D. Cal. L.R. 55-1.

Once the procedural requirements are satisfied, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Generally, a defendant's liability is conclusively established upon entry of default, and well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to the amount of damages. *See TeleVideo*, 826 F.2d at 917–18.

Still, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  Rather, courts consider seven factors—the "*Eitel*" factors—in

deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

The Court considers, in turn, (A) whether DMB meets the procedural requirements for default judgment, (B) whether the *Eitel* factors support entry of default judgment, and (C) whether the relief requested, including the amount sought, is warranted.

### A. Procedural Requirements

As an initial matter, DMB satisfies the procedural requirements for entry of default judgment. DMB submits a declaration confirming that (1) on January 19, 2021, the Clerk entered default against Ramirez, (Decl. June Monroe ("Monroe Decl.") ¶ 4, ECF No. 30-1), (2) the Clerk entered default based on DMB's initial Complaint, (*id.*), (3) Ramirez is not a minor, incompetent, or in military service, (*id.* ¶ 19), and (4) the Servicemembers Civil Relief Act does not apply, (*id.*). Finally, FRCP 55(b)(2) does not require that DMB serve the Motion upon Ramirez.

### B. *Eitel* Factors

Considering the *Eitel* factors, the Court concludes that entering default judgment is appropriate here.

#### 1. *Prejudice to Plaintiff*

The Court first considers potential prejudice to the plaintiff if the Court denies default judgment. *Eitel*, 782 F.2d at 1471. Denial of default judgment engenders prejudice when it leaves a plaintiff without remedy or recourse. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding prejudice where denying default judgment "would leave Landstar without a proper remedy");

1    *PepsiCo*, 238 F. Supp. 2d at 1177.   Here, Ramirez elected not to participate in this
2    action, despite proper service.   (*See* Monroe Decl. ¶ 4.)   Absent a default judgment,
3    DMB will have no recourse to recover for Ramirez's nonpayment and PACA trust
4    violations.   This factor weighs heavily in favor of default judgment.

5            2.      *Merits of Plaintiff's Claims & Sufficiency of Complaint*

6            The second and third *Eitel* factors "require that a plaintiff state a claim on which
7    the [plaintiff] may recover."   *Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
8    219 F.R.D. 494, 499 (C.D. Cal. 2003) (citing *PepsiCo*, 238 F. Supp. 2d at 1175).
9    Although well-pleaded allegations in the complaint are admitted by the defendant's
10   failure to respond, "necessary facts not contained in the pleadings, and claims which
11   are legally insufficient, are not established by default."   *Cripps v. Life Ins. Co. of N.*
12   *Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

13           Here, DMB sets forth three claims for PACA violations, along with claims for
14   breach of fiduciary duty, unjust enrichment, conversion, and declaratory relief.   (*See*
15   *generally* Compl.)   The Court first considers the non-PACA-based claims, followed by
16   the claims for PACA violations.

17                   a.      <u>Non-PACA Claims</u>

18           In its Motion, DMB entirely neglects to address its claims for breach of fiduciary
19   duty, unjust enrichment, conversion, and declaratory judgment.   (*See generally* Mem.)
20   When a party moving for default judgment "does not address" claims asserted in the
21   complaint, it is unclear whether the movant "intends to proceed" on or "withdraw those
22   claims."   *Fernandez-Peralta v. Gamez*, No. CV 19-03749-CJC (MRWx), 2019 WL
23   9240983, at *3 (C.D. Cal. Nov. 7, 2019).   Failure to discuss a claim renders a motion
24   for default judgment "deficient" as to that claim "because it ignores key legal questions
25   and therefore fails to properly address the second and third *Eitel* factors."   *See id.*   Thus,
26   this Court will not enter default judgment against Ramirez based on DMB's
27   unaddressed claims for unjust enrichment, breach of fiduciary duty, conversion, and

28

1  declaratory judgment.  Instead, as DMB appears to have abandoned these claims, the

2  Court dismisses these claims with prejudice.

3              **b.**    <u>Enforcement of Statutory Trust Provisions of PACA</u>

4          DMB brings its first claim against Ramirez to enforce the trust provisions of

5  PACA contained in 7 U.S.C. § 499e(c).  Under PACA, "a buyer's produce, products

6  derived from that produce, and the proceeds gained therefrom are held in a non-

7  segregated, floating trust for the benefit of the unpaid suppliers who have met the

8  applicable statutory requirements."  *King v. Hartford Packing Co., Inc.*, 189 F. Supp.

9  2d 917, 925 (N.D. Ind. 2002).  Thus, "PACA provides certain unpaid sellers of produce

10  an interest in the trust assets superior to that of a perfected, secured creditor."  *Id.*

11          To enforce a trust under PACA, a seller must demonstrate that (1) it sold

12  perishable agricultural commodities in interstate commerce, (2) the purchaser of the

13  perishable agricultural commodities was a commission merchant, dealer, or broker,

14  (3) the seller has not received full payment on the transaction, and (4) the seller

15  preserved its trust rights by giving written notice to the purchaser within the time

16  provided by the law.  7 U.S.C. § 499e(c)(3)–(4); 7 C.F.R. §§ 46.2(z)–(aa), 46.46(c), (f).

17          In its Complaint, DMB sufficiently alleges the first three elements. (*See* Compl.

18  ¶¶ 9–13.)  Moreover, in satisfaction of element four, DMB's Complaint incorporates

19  invoices reflecting the produce DMB sold to Poblano, and the invoices contain the

20  written notice required by PACA to preserve DMB's statutory trust rights.  (*See*

21  Invoices.)

22          Further, DMB alleges in its Complaint that Ramirez was "an officer, director,

23  and/or shareholder of Poblano" who controlled its "operations and financial dealings,

24  including those involving the PACA Trust Assets."  (Compl. ¶¶ 6, 41.)  DMB

25  substantiates this allegation by showing that the USDA's database of PACA licensees

26  lists Ramirez as Poblano's sole principal.  (Monroe Decl. Ex. 3 ("PACA Search"), ECF

27  No. 30-1.)  As such, Ramirez may be held personally liable under PACA. *See Sunkist*

28  *Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) ("[I]ndividual shareholders,

officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.").

For these reasons, the Court finds that DMB's first cause of action is sufficiently alleged and substantively meritorious.

### c. Failure to Maintain PACA Trust Assets

DMB brings its second claim against Ramirez for failure to maintain PACA trust assets. A PACA trustee is "required to maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility . . . is unlawful and in violation of" PACA. 7 C.F.R. § 46.46(d)(1); 7 U.S.C. § 499b(4).

DMB also sufficiently pleads this cause of action. DMB sold produce to Poblano and sent an invoice for payment, preserving DMB's trust rights under PACA. Thus, Poblano "had an obligation under PACA to maintain trust assets in a manner that could satisfy its debt to [Poblano]." *Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-cv-00293, 2021 WL 5155712, at *6 (S.D. Tex. May 14, 2021). Moreover, while "PACA liability attaches first to the licensed seller," "[i]f the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Sunkist Growers*, 104 F.3d at 283; *see Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993) ("[A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier."). DMB alleges that instead of maintaining the trust assets, Ramirez "transferred or diverted the trust assets . . . to Ramirez['s] own use and/or to an unknown third party or parties." (Compl. ¶ 30.) Moreover, DMB substantiates this allegation by attesting that the corporate trustee, Poblano, has insufficient assets to compensate DMB for its loss and that Ramirez is

7

responsible for the breach of trust.  (*See* Monroe Decl. ¶ 20.)  The Court finds that DMB's second cause of action is sufficiently alleged and substantively meritorious.

        **d.**    Failure to Account and Pay Promptly

Under PACA, it is unlawful for any "commission merchant, dealer, or broker" to fail to "make full payment promptly" to sellers of produce.  7 U.S.C. § 499b(4).  Generally, "prompt" payment means payment within ten days.  7 C.F.R. § 46.2(aa).  However, the "buyer and seller may agree to extend the time for payment, as long as the aggregate time for payment does not exceed thirty days after the buyer receives and accepts the commodities."  *Produce Pay*, 2021 WL 5155712, at *6 (citing 7 C.F.R. §46.46(1), (2)).

Here, DMB alleges that despite repeated demands, Ramirez has "failed and refused to truly, correctly and accurately account for and make full payment."  (Compl. ¶ 35.)  Because it has been well over thirty days since the Poblano received and accepted the produce, the Court finds that DMB's third cause of action is sufficiently alleged and substantively meritorious.

        *3.*    *Sum of Money at Stake*

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of [the] Defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471.  The amount at stake must be proportionate to the harm alleged.  *Landstar*, 725 F. Supp. 2d at 921.

At root, DMB seeks no more and no less than the damages that arise directly from Poblano's nonpayment, and so the amount of money at stake in this action is axiomatically proportionate to the harm DMB incurred.  DMB requests a principal amount of $230,918.00, prejudgment interest at the contracted rate, court costs, and postjudgment interest from the date of judgment to the date judgment is satisfied.  (Mem. 9.)  DMB therefore requests compensatory damages equal in measure to the harm it incurred due to Ramirez's failure to timely pay DMB.  Accordingly, this factor weighs strongly in favor of entry of default judgment.

### 4.    *Remaining Factors*

The remaining *Eitel* factors all favor default judgment.  The fifth *Eitel* factor relates to the possibility of a dispute over material facts, and nothing in the record suggests Poblano paid for the produce DMB shipped.  *PepsiCo*, 238 F. Supp. 2d at 1177.  The disposition of the bankruptcy proceedings further confirms that there is no dispute over Poblano and Ramirez's nonpayment.

Under the sixth *Eitel* factor, courts consider whether defendant's default is the result of excusable neglect, and there are no facts before the Court suggesting such neglect.  *Eitel*, 782 F.2d at 1472; (Monroe Decl. ¶ 4).  The seventh and final consideration under *Eitel* is that "default judgments are ordinarily disfavored.  Cases should be decided on their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, because Ramirez has not responded to the Summons or Complaint, rendering a decision on the merits is not possible.  *See PepsiCo*, 238 F. Supp. 2d at 1117 (finding that where a defendant fails to answer a complaint, "a decision on the merits [is] impractical, if not impossible").

In summary, after considering the *Eitel* factors, the Court finds it appropriate to enter default judgment against Ramirez.

## C.    **Requested Relief**

DMB requests an award of (1) principal in the cumulative amount of $230,918.00, (2) prejudgment interest on the principal balance to DMB through and including June 27, 2022, in the amount of $109,682.64, (3) court costs to DMB in the amount of $596.50, and (4) postjudgment interest on the principal balance at the rate of 18% per annum until fully paid.  (Mem. 8–9; Compl., Prayer for Relief; Monroe Decl. ¶ 16.)

### 1.    *Principal*

First, DMB's request to be repaid the $230,918.00 of the principal is justified. DMB supplies invoices establishing that this is the total amount Poblano agreed to pay

but did not pay.  (*See* Invoices; Compl. ¶ 13.)  Therefore, the Court grants an award of principal damages of <u>$230,918.00</u>.

2.   *Prejudgment Interest*

Next, DMB seeks $109,682.64 in prejudgment interest on the principal balance that accrued through and including June 27, 2022.  (Mem. 9.)  DMB seeks prejudgment interest at the rate of 18%, based on language in the invoices indicating that "1.5% per month will be charged on all past due accounts (18% annual percentage rate)."  (*See* Invoices.)

"Prejudgment interest is an element of compensation, not a penalty."  *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001).  In cases involving PACA trust enforcements, courts may properly award prejudgment interest if supported by a contractual right.  *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002).  In such cases, courts typically defer to the contracted interest rate.  *See, e.g.*, *W. Veg-Produce, Inc. v. Lexy Grp.*, No. 2:18-cv-00180-ODW (AGRx), 2018 WL 1804689, at *7 (C.D. Cal. Apr. 16, 2018) (awarding prejudgment interest at the contracted rate of 18% per year in a PACA case); *Fam. Tree Produce, Inc. v. Bautista*, No. SA CV 13-00364-DOC (MLGx), 2013 WL 6733576, at *5 (C.D. Cal. Dec. 13, 2013) (same, upon motion for default judgment).  Prejudgment interest stops accruing, and postjudgment interest begins accruing, at the "final, appealable judgment."  *Dishman*, 296 F.3d at 991.

Here, DMB's request for $109,682.64 in prejudgment interest appears erroneous because it does not account for the distribution from the bankruptcy trustee.  DMB submits an Interest Spreadsheet containing an Amortization Schedule that sets forth the interest accrued since October 2019.  (Monroe Decl. Ex. 2 ("Interest Spreadsheet"), ECF No. 30-1.)  Each of the first fourteen lines, labeled "Loan," represents a single unpaid invoice and shows, in the first two columns, (1) the date that invoice became due and (2) the amount owed under that the invoice.  The other figures on each line show accrued amounts (paid and payable) as of that particular date.  The line labeled

10

"1," near the bottom, represents the $15,438.65 bankruptcy distribution, which DMB received on January 13, 2022, and applied to the interest. After payment of that amount, the interest due as of January 13, 2022, was $75,454.22.

No further payments were made after that point. The next line, labeled "2," shows the state of the account as of June 27, 2022. That line shows that, between January 13, 2022, and June 27, 2022, an additional $18,789.77 in interest accrued, bringing the total interest owed at that point to $75,454.22 + $18,789.77 = $94,243.99. This is the figure that appears to the Court to be the amount of prejudgment interest that Ramirez owed as of June 27, 2022, and thus it appears to be the proper amount of prejudgment interest to award.

DMB's erroneous request for $109,682.64 appears twice on the "Grand Totals" line, once under "Interest Accrued" and once under "Interest Paid." (*Id.*) DMB's error is that both these figures represent *all* the prejudgment interest, paid and unpaid, that accrued up to June 27, 2022; the bankruptcy distribution is not deducted. Subtracting the bankruptcy distribution of $15,438.65 from the total "Interest Accrued"/"Interest Paid" figure results in $94,243.99, which verifies that this is the correct amount of prejudgment interest to award. (*Id.*) As DMB apparently requested an amount that does not account for the bankruptcy distribution, the Court awards prejudgment interest in the adjusted amount of $94,243.99.

### 3. Costs

In addition, DMB seeks reimbursement of court costs in the amount of $596.50. Filing fees and fees for service of process are recoverable under PACA. *See e.g.*, *W. Veg-Produce*, 2018 WL 1804689, at *8 (awarding filing and service costs to the prevailing party in a PACA default judgment); *Fam. Tree Produce*, 2013 WL 6733576, at *6 (same). The Court's docket reflects payment of the $400 filing fee, and DMB submits a receipt for service of process showing a fee of $196.50. (*See* Decl. Jason Read Ex. 2 ("Process Invoice"), ECF No. 14-1.) Accordingly, the requested costs are supported by the record, and the Court grants DMB's costs in the amount of $596.50.

4.      *Postjudgment Interest*

Finally, DMB seeks postjudgment interest on the principal balance at the rate of 18% per year until fully paid. (Mot. 9.)  Pursuant to 28 U.S.C. § 1961(a), postjudgment interest is appropriate on any money judgment in a civil case recovered in a district court.  *See Trs. of Operating Eng'rs Pension v. Joel Silverman & Assocs., Inc.*, No. CV 08-5410 GAF (CTx), 2009 WL 10670632, at *6 (C.D. Cal. Jan. 30, 2009).  However, "[p]ost-judgment interest is generally governed by 28 U.S.C. § 1961, which mandates the awarding of postjudgment interest according to the federal rate."  *Progressive Produce Corp. v. Wild W. Produce, LLC*, No. CV 13-0665-RSWL (PJWx), 2013 WL 1935921, at *2 (C.D. Cal. May 9, 2013).  The federal postjudgment interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

The cases that DMB cites in support of its argument for an 18% interest rate are either nonbinding or inapposite.  The Ninth Circuit in *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1108 (9th Cir. 1998), awarded postjudgment interest at a rate of 18% after an arbitrator had awarded 18% interest "until judgment or paid in full."  No such arbitration has taken place in the instant action.  Indeed, the court in *Citicorp Real Estate* noted that postjudgment interest is "governed by federal law."  *Id.* at 1107–08 (citing *AT&T Co. v. United Comput. Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996)).

Here, DMB fails in its burden of demonstrating that the parties "contractually waived their right to have post-judgment interest calculated at the federal statutory rate," *id.* at 1108, or that the contracts otherwise call for postjudgment interest at an 18% rate. Instead, the Court awards DMB postjudgment interest at the statutory rate.  *See Progressive Produce*, 2013 WL 1935921, at *2 ("Because Plaintiff has not set forth sufficient evidence to support its request for postjudgment interest at the rate of 18% per annum, Plaintiff is only entitled to postjudgment interest calculated at the federal

rate pursuant to Section 1961."); *Fam. Tree Produce*, 2013 WL 6733576, at \*7 (awarding postjudgment interest at federal statutory rate and noting that "Plaintiff does not have a contractual right to postjudgment finance charges"). The Court grants DMB postjudgment interest at the rate set forth in 28 U.S.C. § 1961(a).

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** DMB's Motion for Default Judgment. (ECF No. 30.) As to Defendant Eliborio Ramirez, the court hereby:

- **GRANTS** default judgment in the amount of **$325,758.49** on DMB's Claims One, Two, and Three for PACA violations, comprising a principal balance in the amount of $230,918.00, prejudgment interest in the amount of $94,243.99; and costs in the amount of $596.50;
- **AWARDS** DMB postjudgment interest at the rate established by 28 U.S.C. § 1961; and
- **DISMISSES** DMB's Claims Four, Five, Six, and Seven **WITH PREJUDICE**.

The Court will issue Judgment.

**IT IS SO ORDERED.**

July 25, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**